AMANDA ANDERSON, Appellant, v. GUST ANDERSON, Appellee.

No. 40084.

MARCH 18, 1930.

*Walter Canaday* and *T. J. Mahoney,* for appellant.

*Baker, Doran & Boone* and *L. R. Johnson,* for appellee.

DE GRAFF, J.—There is but one question presented on this

appeal: Did the trial court err in refusing to grant the relief prayed by plaintiff in her petition for new trial? It was stipulated and agreed by and between the parties that the matter of the meritorious defense to the original action should be passed, and the court should find, in the first instance, whether or not the plaintiff in this case had reasonable excuse for failure to defend, and in the event that the court found that there was a reasonable excuse, then a full hearing of the entire matter in this case should be had.

The facts disclose that the defendant-appellee filed his petition in the divorce action against the plaintiff-appellant on June 27, 1927. A default decree was entered on September 12, 1927. It is admitted that three terms of court elapsed before the plaintiff-appellant (defendant in the divorce action) filed her petition for new trial, or approximately a period of nine months after default was entered. The statute provides that:

"Default may be set aside on such terms as to the court may seem just, among which must be that of pleading issuably and forthwith, but not unless an affidavit of merits is filed, and a reasonable excuse shown for having made such default, nor unless application therefor is made at the term in which default was entered * * *." Section 11589, Code, 1927.

Clearly, the instant petition is not within the purview of this statutory provision. It is further provided that:

"Where a final judgment or order has been rendered or made, the district court, in addition to causes for a new trial hereinbefore authorized, may, after the term at which the same was rendered or made, vacate or modify the same or grant a new trial: * * * For unavoidable casualty or misfortune * * *." Section 12787.

Furthermore, where the grounds for a new trial could not, with reasonable diligence, have been discovered before, but are discovered after the term at which the decision was rendered or made, the application may be made by petition filed with due and timely notice on the successful party. Section 12788.

May it be said, therefore, under this record, that the plaintiff-appellant used due diligence in filing her petition for new

trial? This question must be answered in the negative. It is clearly shown that, within a very short time after the default decree was entered, Amanda Anderson, the defendant in the divorce action, was aware of the fact that her husband, Gust Anderson, had obtained a divorce from her, and that she would not receive anything in the way of alimony, except $50, which was stipulated to be paid by an agreement between her attorney and the plaintiff's attorney. This sum was paid.

It is indisputably shown that her first attorney, prior to the hearing of the divorce action, told her that she had no defense, and that she asked her attorney to call her son to the attorney's office and explain the situation to him. This was done. The testimony is undisputed that both the mother and the son went to Pilot Mound, for the purpose of obtaining evidence, but failed to find the quest of their search. True, the mother testified that the son had no authority from her to advise or direct her attorney to do anything in the premises. The son, however, did direct her attorney to "drop the case and accept the settlement offered." The mother had full confidence in her son. He was an experienced business man, a banker, and she lived with him in Madrid. Naturally, the son, with filial love and loyalty, would recommend to his mother only that which would be for her interest and welfare. The trial court had the right to draw the proper inferences from the evidence bearing on the conversations between mother and son, and between the son and her attorney. We cannot escape the conclusion, under the facts, that the son advised his mother in the same manner as he advised her attorney. It is but fair to assume that, in the conversation between mother and son, she agreed with the son that it was best to drop the case.

Appellant's cause of action on her petition must stand or fall on the testimony of plaintiff-appellant, her son, and her then attorney. There can be but one interpretation placed on her actions and request that her son be called to her attorney's office. Her son was the natural and logical person to whom she would look for advice, under such circumstances. She did not appear at the time the divorce action was tried, although both her son and her attorney were present. She knew then, or shortly thereafter, what had been done at the trial. In other words, the grounds of the instant petition were known to her at or

before the trial. She failed to move to have the default decree set aside within the term time. She made no move whatsoever until her petition for new trial was filed, some nine months after the divorce decree was entered. She acted too late. *Connell v. Connell*, 119 Iowa 602. If negligence is chargeable to her or to her attorney before or after the default was entered, it follows that plaintiff cannot obtain a new trial. Were courts authorized to disturb judgments because of neglect and unskillfulness of attorneys appearing in cases, the character of adjudications of the courts for stability would be materially impaired. There is no fraud claimed in the instant action. As said in *Jones v. Leech*, 46 Iowa 186:

"The law regards the neglect of an attorney as the client's own neglect, and will give no relief from the consequences thereof. * * * It would frequently occur that a judgment would not be regarded as settling the rights of the parties, until the court had, in a proceeding of this character, passed upon the skill and diligence of the counsel. This would not result so often from actual negligence or want of skill of attorneys, as from the disposition of litigants to avail themselves of every possible avenue of escape from the consequences of defeat."

We do not question that her attorney did advise the instant client honestly, nor do we doubt that the client was truly advised as to her rights, and knew what was about to happen. If the plaintiff-appellant had a defense to the original action in divorce, that defense should have been presented in said action; and she is now precluded, unless some new facts exist which were discovered by her after the term in which the default was entered. The burden was on her. She does not allege in her petition the discovery of any new facts after the term in which the default was entered. At any rate, her attorney was fully cognizant of all the facts before the default was taken. She expressly relied upon the skill, judgment, and learning of her attorney, and if he failed her in any respect (which we do not find), she cannot now complain. It may not be said, in the light of all the evidence, that there was any unavoidable casualty or misfortune preventing her from defending in the divorce action. She simply failed to use reasonable diligence to act within the time as prescribed by statute, Section 11589.

The power to set aside a default is vested in the trial court, and is a matter which is discretionary with that court. This court will not set aside a judgment unless there is shown a clear abuse of the vested discretion. There is no such showing here.

The order and judgment entered is—*Affirmed.*

MORLING, C. J., and STEVENS, ALBERT, and WAGNER, JJ., concur.